695 Harvard Michael v. Pella Products. Will the attorneys please approach? Your names, please, and how long do you expect your argument? Good morning. Jeffrey Block with a plaintiff appellant. I would estimate about 15 minutes. Okay. And you reserve time for rebuttal? I would like to, yes, Your Honor. Good morning, Your Honor. Michael Wray on behalf of Defendant Apple v. Pella Products, Inc., 15 minutes. Okay. Thank you. Thank you, Your Honor. Good morning, please, panel. We submit that we believe that we think the lower court improperly entered summary judgment against Mr. Michael for a number of grounds. One, we think that the lower court improperly substituted, as the grievance in this matter, the corporation, RJM, Inc., instead of Mr. Michael. We also think that there are disputed issues, the fact that the lower court did not consider, as to whether who was actually performing the services for Pella. Was it the individual, Mr. Michael, or was it his corporation, RJM? Well, how do you get there under the Act? Because it seems to me if the plaintiff is right, it doesn't matter how big the corporation is that's contracting with the supposed employer. It's always going to be individuals who perform the services. The corporation itself never does. So how does that square with the Act? Well, I think the way it squares here with the Act, Your Honor, is when you look beyond just the simple formality of, you know, it's a corporation that we contracted with, and the question becomes, I think, who's actually doing the work? So here what our position is, when you have Robert Michael, who's interviewed by Pella, trained by Pella, has to do things in accordance with Pella standards, shows up to jobs wearing Pella hats and Pella shorts, drives a Pella-branded truck, holds himself out as, well, I'm the foreman here for Pella, where Pella on its own website provides these are Pella installation experts. I think those are the facts that take it from the corporation, RJM, performing the services to, well, what you have here are the individuals. But suppose it was McHugh Construction, and individuals from McHugh Construction came and interviewed at Pella and did the same thing that Mr. Michael did. All those individuals are now Pella employees and not employees of McHugh Construction? Well, I think under the facts that we've pled, and I think the facts that exist in this case, I would say yes, because I think what we believe Pella is doing here is they're outsourcing their labor force. They get all the benefits and enjoy all the privileges of having, in essence, employees. We can hold these people out as our employees. We can have them wear our hats and shirts, show up in our trucks, but we don't have to pay any of the costs associated. But RJM, who is an employer, who pays its own employees and takes out federal and state taxes and pays overtime and does all the things it's supposed to do as an employer, doesn't RJM build that into its bid for Pella work? And so Pella isn't getting any discount. It's just paying what RJM needs to do to make a profit. Well, you would certainly expect that RJM would build that in, but one of the advantages that Pella does have is it gets to avoid those costs, and that, I think, is one of the – What costs are you – Well, it's the worker compensation costs. It's the employee – What? Worker compensation costs. Doesn't Michael's Construction have the workers' compensation costs? They do, but they may not have – they don't have the same benefits. Well, but that's just the difference of benefits. I mean, that's really not what we're talking about. Right. I understand that, Your Honor. But I think the way we are looking at it is that there are certain employee benefit costs that Pella gets to pass on or shift to RJM that Pella does not bear, but gives Pella now a little bit more of a competitive advantage in the marketplace because it is not absorbing those costs, and that is one of the policy considerations behind the statute. Well, isn't this really sort of a franchise, franchisee-franchisor relationship in which they're hiring out companies that will then represent them in their product line and do the work, but they're independent? I mean, many corporations in Illinois have situations where you go to Sears and you're not hiring Sears employees. You're hiring some independent contractor who has an arrangement with Sears, wears their uniforms, is trained by Sears, uses their equipment and so forth. I mean, I'm trying to figure out how far this goes. I mean, when would the statute not apply? Well, I think the statute does not apply if in the situation where you have the independent contractor and they're doing the work in their name. They're not showing up. So it's just a question of name? Well, I think it's more than a question of name. As the statute talks about, it's a question of are we controlling what you're doing? Are we telling you how to do your job? Are we training you? Are we supervising you? Are we overseeing how you're doing what you're doing? Everything that a traditional employer would do with a traditional employee, except we now get to put the moniker of you're independent from us, so we now get to avoid paying all those extra benefits and all those extra costs. I'm not sure. I'm trying to follow this extra benefits and costs because it seems to me that the corporation here is picking up those benefits and costs. I don't know how you can say they're extra. They're different, but that doesn't make them extra. They're different. Our argument is that, well, RJM is certainly picking up those costs. Pella is not. And that, I think, was one of the goals behind the statute is to sort of level the playing field so you don't have certain contractors who don't have their own employees where others do, where others are bearing more costs for having employees. Yeah, but the purpose of the act is for the protection of the employee, right? Yes, that is correct. And so when RJM's own employees get workers' compensation and unemployment insurance benefits, they have their taxes taken out of their salaries, they are paid whatever wage is required of RJM, and they're paid overtime. How are these employees within the scope of the act? Well, I think they're within the scope of the act because, I think, they are performing and doing the work for Pella. They are not really doing the work in the name of RJM. So we think that Pella should have borne these costs directly. But they're paid by RJM, right? They're not paid by Pella. That is correct. They are paid by RJM. If you subcontract out them, you're always at some – when you do a subcontract, by definition, somebody else is doing the work. Yes. Okay. So how is that – how is this any different? Because it's an independent company. It's an independent company. You can't deny that. That's been hired out as a subcontractor to do the work. And Mr. Michaels is part of that company. The way we think it's different, Your Honor, is because in the manner in which the work was performed. Again, we just think that it's that Mr. Michaels is, in essence, showing up as Pella and doing Pella's work. Where in the statute are you specifically relying for that statement? Well, what we're relying on is in the statute itself, which says that an individual performing services for a contractor is presumed to be the employee of that contractor unless. So here, our argument is that whether Mr. Pella or the corporation was. And we think because Mr. Michael is showing up as a Pella-trained window installer, Pella is supervising his work, he's driving the Pella-branded truck, Pella's holding himself out as the employee, that in essence and reality he's showing up as a Pella employee and he's performing the service for Pella. And that's why we think the statute applies. And then the question is, does Pella control the performance? Does Pella control the performance?  Does Pella control the performance? Is it within the ordinary course of business? So that's how we read the statute. I understand that there's the regulation which says that a corporation cannot be an individual. And we don't take any issue with that because I don't think a corporation can be an individual. But the corporation – I mean, the regulation itself says nothing about whether an employee of a corporation has rights or standing under the statute and whether the employee of the corporation or even the sub or even the independent contractor of the corporation could bring a claim against the contractor. And I think that is, I think, where I would respectfully take issue with how the lower court ruled. I think the lower court expanded the regulation beyond what it says to apply to everyone who works for a corporation. And our argument is the question here, the fact question is, who is actually performing the service? So, again, to go back to the fact that a corporation, no matter how large or small, cannot itself perform the work, then who does the act not apply to? Well, I think the act applies to individuals, but I think, as in any case, it really depends on who is actually doing the work and what are the facts of the case. So in plaintiff's view, it would have to be that RJM employees showed up in an RJM-branded truck with RJM T-shirts on, and then they would be outside the scope of the act. Well, I think if they showed up as RJM, and if Mr. – you know, what we also have here is Pella had the right to say to RJM, you can bring X number of employees per job. So they're now getting into the control of how many people can show up. You can only bring employees that have interviewed with us and approved us. So they're now getting into the control of who is allowed to work on the job. If it were a different situation where RJM contracted with Pella, and RJM says, we will install your windows, and Pella calls and says, we have a job for you for Mrs. Smith. We have eight windows. Go install them. RJM shows up as RJM, brings as many or as few people as they want, and they do the work, and it's quality work. Obviously, it needs to be. Then they are a separate company, and they are doing the work in their own name. But where we think it comes within the purview of the act is when they show up, in essence, as Pella. And Pella is dictating who can show up in terms of they have to be qualified by us. But are they saying that to the individual, or are they saying that to the contractor, the subcontractor? Well, they're saying that to the subcontractor. You can only bring people that we have approved and we have trained and we have interviewed, and you can only bring X number of people. So I know there's a point. Unless it is showing that the individual has been and will continue to be free from control or direction over the performance of the service for the contractor, both under the individual's contract of service and in fact. So, I mean, it's the same reading the contract. This is a contract between Pella and RJM, and any directions are going not to the individual but to RJM. Well, but we would also argue that they have to be, as the statute says, free from control and direction not only under the contract but also in fact. And we don't think here they were free from control and direction in fact. We think in fact they were subject to Pella's control. The evidence does show that Pella did come, did supervise work, did inspect the work, and certainly Pella had the right to come and inspect all the jobs. And they made quality comments, and they had them, you know, this wasn't done the way we wanted. We need you to change that. That takes it into, I think, more of the controlling what is done. If it is the, what I would say the more traditional contractor-subcontractor relationship where if RJM simply goes and does its job as a Pella subcontractor, installs the windows. But there's a difference between telling the individual and telling RJM, well, this job needs to be done better, you didn't do a good job here. There's a difference between the individuals who work for RJM and RJM. Right. And I think our argument there is that what we think the facts show, or certainly is a question of fact, that Pella representatives showed up and not only told Michael, but told Michael employees, you need to do it this way or you need to do it that way and we've trained you to do it the way we want you to. And I think that's what takes it beyond just the mere I've contracted with you and you're doing a job for me and I'm hands off and I let you do what you want. It is more of the control that is asserted here and the direct control over what is going on that we think brings it within the purview of the act. Does Pella, anything in the record show that Pella does its own contracting? That they install the windows? They're a manufacturer. My understanding is that Pella does have a few number of employees themselves that do window installation. Very few, but basically it subcontracts for the installation. Most of it they form out. And one thing I will note, Your Honor, is that, and I know this is not in the record, so I know there was a limitation on discovery. We only focused on the question as to whether RJM was a bona fide corporation. And I know one argument was made that Pella has the right to rely on corporations. In the limited document discovery that we received, there were certain individuals that were hired by Pella as window installers. So I don't think it's quite crystal clear that Pella only exclusively dealt with corporations. One other thing I will note on this. Although the statute says it's outside the usual course of services performed by the contractor. So the fact that they have a few wouldn't necessarily have an effect on that. Well, I think now that would get into whether or not we would meet the prongs of the test. And I think what the lower court simply said, you don't get there because RJM is a corporation, they're out. And anyone who works for RJM is out. I will note, as we cited in our reply, there are a number of cases around the country that have considered the issue. The cases that we have found all the courts have not have said, just because you contract with a corporation, we're going to look beyond that. We're going to look to what is your relationship with the employee. Because I think our view is that the intent behind the statute was to look beyond the formality of the contract or the label. And I think when you look at the 12-factor test that the legislature set up for, when you look at individuals and partnerships, there are a number of factors there that they're really looking at as far as who is really doing the work here. Who's controlling the manner and the means? In whose name are you doing the work? Is the contractor holding these people out as their employee or as an independent contractor? Does the subcontractor have to wait to get paid before it pays its employees, which is what we had here? Mr. Michael testified, I would have to wait to get my money from Pella before I could pay my employees. So we think in essence that, and why we think this falls within the purview of the act, is because we think what Pella has basically done is it outsourced its labor force. And, again, we think it enjoyed the benefits of having these people as employees, but didn't really have to deal with them as employees or pay them as employees or deal with all the other costs and headaches that may be that come with having employees. Where, you mentioned cases around the country. Where other than Massachusetts? Your Honor, this is page 5 to 6 of our reply. Not only in Massachusetts, we cited cases from, this is a Fourth Circuit decision in Virginia. There is a decision from the District of Oregon. There is a decision from the Middle District of Florida. We have a decision from Vermont. And we have a Washington Appellate Court decision. And do any of those jurisdictions have a regulation like the one here that exempts bona fide corporations from the definition of individual? I don't believe they do, Your Honor. So, yes, that is a distinction. But, again, we think the regulation, what it says, and we don't dispute it, is that a corporation cannot be an individual. But, again, I don't think it really addresses the question of who is actually performing the service and if the individuals of the corporation are really acting as the labor force for the contractor, does that exempt those workers from the statute? Did RJM provide the labor force? We believe it did. We believe RJM provided Pella's labor force and did Pella's work that Pella otherwise would have its own employees have to perform. Right. So RJM selected who would be working on a project. It wasn't something dictated by Pella. Well, to the extent that they would pick, you know, Smith and Jones to work on a project, yes, as long as Smith and Jones were interviewed by Pella and qualified by Pella and Pella dictated how many people you could bring, but then it was Michael who made the decision who really, in essence, acted like the foreman of the crew. I mean, that's really what he did. He acted as the foreman and decided, I've got a job today, I need five of you, I'll take you five, you know, however he made his decision. And it would be the same thing as if he was, you know, the foreman working on a Pella job. And then RJM hired, fired, and paid all the employees? It wasn't anything Pella got involved in? That is correct, yes, Your Honor. Yes. And RJM set the work schedules for the employees and that wasn't something Pella did? No, only to the extent that Pella told RJM that there were jobs that had to be performed and how many people had to go to a particular job or limited how many people, then RJM would make that decision as far as who would show up and make sure that they had the people there. So that, unless the panel has any questions, I'll reserve a few minutes for a bow. Thank you very much. Thank you. May it please the Court, Counsel, the purpose of the Employee Classification Act is to prevent companies from misclassifying individuals as independent contractors when really they should be employees of that company. Here, Pella didn't classify the plaintiff, Robert Michael, as anything. It hired a bona fide corporation, Robert J. Michael Holmes, Inc., to perform services. And that bona fide corporation classified the plaintiff as an employee. The Employee Classification Act simply does not apply to this case. Plaintiff's argument is about direction and control. He seeks to apply the elements of the underlying statute, but we don't get there. Pursuant to the Department of Labor's regulations, if the entity performing services is a bona fide corporation, as all parties in this case agree Robert J. Michael Holmes, Inc., was, then the statute doesn't apply. We don't get to issues of direction and control. They're outside. That is applying the statute, and that's not what we do here. And it's important to note what the Illinois Department of Labor did in setting up the bona fide corporation regulation. It set up regulations that distinguished between real corporations functioning as real corporations in the real world and sham corporations, sham corporations that may be designed to circumvent the purposes of the act and classify individuals as independent contractors. There's no dispute here that Robert J. Michael Holmes, Inc. is such a bona fide corporation, and that's who performs services for Pella. This is exactly the point that Pella, by outsourcing all of these installation jobs, avoids all the attendant labor costs that it would otherwise have to pay if it had its own employees. Your Honor, that's more of an economic argument, but when we look at the statute and we look at the purposes of the statute, the statute does address, and the debates in the House and the legislature talked about unfair competitive advantage. Now, what the legislature was concerned about was let's have two companies, one that hires four individuals, another company that hires four individuals. Say Company A, 1099s, all four of those individuals, pays, withholds no taxes, pays no overtime, et cetera. And this other company, Company B, has four employees. It has insurance for these employees. It pays them overtime. Now, obviously, Company B's costs are higher than Company A's. That's what the statute was concerned about. Now, that example does not apply at all to this case because the relationship between these two entities, between Pellet Products, Inc. and Robert J. Michael Homes, Inc., included employee costs. You know, it's not a matter of whether this was a good deal or a bad deal for Robert J. Michael Homes, Inc. For purposes of the statute, what we're concerned with is that the transaction includes employees and not independent contractors. And what we don't have in this case, where, again, All we have is employees of a bona fide corporation. So it's certainly our position that the statute doesn't apply, just based on the plain language of the regulations and the language of the statute itself. For example, Judge Hyman mentioned subcontracting relationship. I don't think there's any dispute that, in this situation, Pellet Products subcontracted to a bona fide corporation. Robert J. Michael Homes, Inc. Well, if you look at the plain language of the statute, Section 10F of the statute provides that a general contractor is not liable for any misclassification by a subcontractor. The statute contemplates levels of a relationship. It contemplates a general contractor and a subcontractor. And an employee or an individual of the subcontractor, their remedy, as contemplated in the plain language of the statute, is only against the subcontractor. And the purpose of the bona fide corporation fully effectuates that purpose because it makes sure that that subcontractor is real. When we look at the elements of the bona fide corporation regulation, we know that that corporation is capitalized. It has insurance. It can pay its debts. It pays taxes. It withholds taxes. It files complete tax returns every year. So it fully effectuates the purposes of the statute. Now, plaintiff wouldn't have any claim under the statute anyway because he was an employee. But if we take the situation, let's say RJM classified the plaintiff as an independent contractor. Under the statute, his only remedy would be against his bona fide corporation that employed him or that he performed services for. He doesn't get to jump up levels in the statute. That's just not in the plain language. Well, would it make a difference if RJM was really Mr. Michael, he was a sole proprietor? It certainly would, Your Honor. If he was a sole proprietor, then the plain language of the statute does discuss sole proprietors being, quote, individuals performing services. So that's contemplated. But here, where it's a bona fide corporation that meets, you know, seven, eight, multiple factors and it's a real corporation pursuant to the Illinois Department of Labor's regulations, it can't be an individual. It's expressly excluded from the definition of people who are covered by the act. All we have here is a contract between Pella Products and Robert J. Michael Homes, Inc., two bona fide corporations. And the bona fide corporation that Pella Products hired had employees. But certainly as far as the public is concerned, as far as anybody looking at Pella's website is concerned, these are all Pella employees, right? They wear Pella uniforms. They drive a Pella truck. Your Honor, we dispute the facts. I'm sorry. The facts are actually uncontested that what plaintiff's counsel stated about some of the points is wrong. For example, he talked about Pella controlling the number of employees that RJM was allowed to send to the job. That's actually contradicted by plaintiff's own testimony. What Pella did is they had an approximate slotting for each job so that if it was a big job, it went to a bigger corporation. Pella doesn't care how many employees RJM sends to the job site. They paid him a flat fee. That was for RJM to work out. But with respect, Your Honor, to the hat that Robert Michael was wearing or the hats that his employees were wearing or those T-shirts, those are the elements of the statute that's direction and control, and we just never get there because this was a bona fide corporation. So he's, again, just trying to jump over and get into the statute when the regulations and the plain language of the statute provide that he never actually gets there. So once it's determined that it's a bona fide corporation, end of story? Correct, Your Honor. That's it? Absolutely, Your Honor. Which is why the court below entered summary judgment? Yes, Judge. And that's simply applying the plain language of the Illinois Department of Labor's regulation, which is entitled to deference and which must be interpreted in a manner that doesn't render it unreasonable. Plaintiffs have stated that because Mr. Michael happens to be a person, you know, we must allow him to file suit under this statute and ignore the corporation that employed him and ignore the fact that it was a bona fide corporation. But this renders the regulation completely meaningless. Every corporation, as Judge Mason pointed out, does business through people. Microsoft does business through Bill Gates and other Microsoft employees. Robert J. Michael Homes, Inc. did business through Robert Michael and the other employees of RJMA. If we give that interpretation to the bona fide corporation and carve such a huge exception to the statute, it's never going to apply and it renders the language of that particular statute superfluous. Members of the court, Robert J. Michael Homes was a bona fide corporation in every sense of the word. It functioned as a real corporation. It held itself out to Pella and the world as a real corporation. It had 14 employees. There are no independent contractors here. It withheld taxes, covered them with insurance. This is exactly what the regulation was designed to do. As Your Honor pointed out, it doesn't matter whether we're dealing with Robert J. Michael Homes, Inc. or McHugh Construction. When we have a bona fide corporation, the statute doesn't apply. And similarly, the statute doesn't apply here because there has to be an independent contractor. And there wasn't one here. The purpose of the statute is about independent contractors not receiving benefits, the state of Illinois not receiving taxes, companies hiring only independent contractors and not accounting for employee costs because they only have independent contractors. That's what the statute is concerned about, and there can't be any real dispute about that. There's no independent contractor in this case that hasn't received wages and benefits, right? Well, there's no independent contractor at all, Your Honor. They're all employees. They were W-2 employees. So, yeah, to address your point, all we have is employees. There's no independent contractors at all. Exactly. You can't have an independent contractor misclassification without an independent contractor. It's the most fundamental element of this case. So you would say that Mr. Michael did not perform work for Pellett. He performed work for RJM. Exactly, Your Honor. And that's what's contemplated in the statute. Again, looking to 10-F of the statutory language, even if there was a misclassification, his remedy would be with his own bona fide corporation. The statute doesn't contemplate that he can jump levels and get to the general contractor. The statute specifically acknowledges that there will be levels of relationship between corporations and bona fide corporations that are only at issue in this case. You know, the plaintiff can't have it both ways. He can't shed corporate status like a snake sheds its skin. RJM, Inc. did business as a corporation, and that's fine. There's obviously tax advantages and a myriad of other reasons that an entity would do business as a corporation, but he can't bypass it for purposes of this case. That's the purpose of the bona fide corporation. If you're a corporation, you're a corporation. That's what the bona fide corporation regulation does. And lastly, as Judge Neville mentioned, there are no independent contractors here. All we're doing is dealing with employees. There was a contract between Pella and Robert J. Michael Holmes, Inc. to perform services. Two bona fide corporations. The bona fide corporation that performed the services only had employees. Nothing about this relationship implicates the Employee Classification Act. Does the Court have any additional questions that I can answer? No, thank you very much. Thank you, Your Honors. We'd ask that summary judgment be affirmed. Mr. Fleck. Thank you, Your Honor. Just two brief points on Raboff, if I may. Judge Basin, you asked the question, what if he was a sole proprietor? And Mr. Kramer said, well, then the act applies. And as the lower court actually said, I could see how he would be the employee of Pella but for being in the corporate form. And I think that's one of our, the contention is that that is exactly what the statute is designed to look beyond, just what is the form? It's when the form is a fiction. You know, when it's really a fictitious corporation that the act is designed to address this situation where the contractor is able to avoid these employee costs. Here, all the indications are that RJM was a corporation that had an existence beyond its contract with Pella, right? That is correct, Your Honor, yes. The only other point I will make is I know we were talking about whether they are independent contractors and are they properly classified as independent contractors, and we have no independent contractors here. And I think what's very interesting is if you look at Section 10 of the statute, it actually never uses the two words independent contractor. It only uses the word individual, and the question is, is that individual an employee of the contractor? And I think if the legislature were merely concerned with are you an employee or not, it could have easily written the statute to say, instead of saying an individual performing services, it could have easily said an independent contractor performing services. But it chose the word individual. And I think, to me, that shows what the intent of the legislature was behind the act, which was to apply to individuals regardless of whom they are working for, not just, well, somebody has classified them as an employee, so that's good enough. So I think, to me, I think that is significant, unless the Court has anything further. I guess once you read the words an individual performing services and read the definition of that, I mean, their argument is that's the end of the story. Right. I understand their argument is that. And how to get around that, I mean, again, I think you seem to be skipping a step. Okay. Well, I'm reading it, Your Honor, is that the question is really we think who is performing the services. Is it really RJM? I understand there's the contract that says RJM, you will perform these services, but in reality it's the individuals performing services as employees of Pella. In essence, that's really what they're doing. Well, that's the purpose of the statute is to watch out for that kind of situation, unless it's a bona fide corporation. Right. But I understand. Okay. Thank you very much. Thank you. Appreciate the arguments of both sides. The case will be taken under advice. Thank you very much.